UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
RONALD A. NIMKOFF,

        Plaintiff(s),     **ORDER**
                     CV08-2856 (ADS)(WDW)

  -against-

ERIC J. DOLLHAUSEN, et. al.,

        Defendant(s).
-------------------------------------------------------------------X

**WALL, Magistrate Judge:**

  Before the court are two discovery motions by the plaintiff (DE[56&57]), both of which are opposed by the defendants (DE[62&63]). The motions are renewals of motions that were previously denied without prejudice to renewal. For the reasons set forth herein, both motions are granted in part and denied in part, as follows:

    1) the request as to Interrogatory # 2 is denied;
    2) the request as to Interrogatory #3 is denied, but the defendants will provide the court with the names and last known addresses of Mr. Nimkoff's cellmates, as explained *infra*; the request as to Document Demand 19 is denied;
    3) the request as to Interrogatory 13 is granted, to the extent that the defendants must identify the facts underlying their claim of probable cause;
    4) the request pursuant to Rule 34 is granted to the extent that the defendants will photograph the cell pursuant to Nimkoff's request and it is otherwise denied;
    5) request that the defendants be compelled to produce all civilian complaints against the defendants is granted to the extent that the defendants must produce the withheld documents and information for in camera review; and
    6) the court declines to award costs to either party.

Motion Number 56

  The first motion seeks an order compelling the defendants to respond to interrogatory requests 2, 3, and 13, and document request number19, and an order directing defendants to allow the plaintiff to inspect and photograph the cell in which he was held. DE[56] at 1.

Interrogatory # 2

Interrogatory number 2 asks, *inter alia*, for the names of the police officers and personnel who were present at the police station when Nimkoff was held. It further asks that defendants describe each officer's and county employee's dealings with and observations concerning Nimkoff, if any. On this motion, Nimkoff argues that "he was needlessly handcuffed to a wall in a cell for about 6 hours," and that people who observed his confinement and treatment at the station, including county personnel and arrestees, "possess relevant information" and will likely need to be called to testify at trial.

The defendants' original response, in addition to rote objections, stated that they could not answer because "no log or record is kept that would enable" them to do so. DE[56], Ex. C. Their supplemental response stated that, notwithstanding their objections, they "do not maintain a log or record that would enable them to answer the interrogatories as posed. Defendants have provided a roll call log bates stamped Nassau County 000810-000811 indicating which officers were assigned to the Second Precinct. This log does not indicate which officers were present in the Station." *Id.* The plaintiff argues that "it is hard to believe that in the absence of a log, defendants (all of whom were at the Station when Mr. Nimkoff was taken there) have no idea who else was at the Station with them and who observed and interacted with Mr. Nimkoff." He further argues that forcing him to depose "all 25+ people listed on the roll call to determine who was privy to his booking and confinement would be costly and highly inefficient." DE[56] at 2 & n.4.

In their opposition to the motion, the defendants reiterate that they "do not keep a log of officers or personnel that come and go from the stationhouse." DE[62] at 3. The document

referred to by Nimkoff, they say, is "a record of which officer was assigned to a particular post (police car), [and] . . . it does not mean that any particular police officer was in the stationhouse at any point in the day." *Id.* A more practical approach, they suggest, would be questioning defendants at their depositions about who they recall seeing in the stationhouse in the relevant time period. The court agrees. The defendants have responded to the Interrogatory and claim that they do not have the information that the plaintiff is seeking, and the court has no reason to think otherwise. That prong of the plaintiff's motion is denied.

Interrogatory # 3

Interrogatory number 3 asks the defendants to identify all civilians present at the station "on July 18, 2007 for any period of time from the moment a call was received requesting police assistance at 12 Laura Lane until Mr. Nimkoff was released from police custody." Among the persons Nimkoff wants identified are "all persons who were placed in cells along with or near Mr. Nimkoff." Document Request number 19 seeks "documents concerning or showing which individuals were placed and/or held in cells at the Station while Mr. Nimkoff was incarcerated on July 18, 2007." The defendants object, and stating that the requests seek "private information regarding non-party individuals." In their supplemental response, they added that they "do not maintain a log of non-arrestee civilians who enter the Station." The dispute about this interrogatory boils down to the plaintiff's demand for the names of the two arrestees who were in the cell with him. The defendants object to the identification of non-party prisoners on two grounds: first, they seek to protect their privacy from Nimkoff's "prying eyes," and second, they object to revealing the identity of prisoners whose criminal records have been sealed pursuant to N.Y. Criminal Procedure Law §160.50. The defendants report that "[h]aving reviewed the

3

second precinct prisoner log for July 18, 2007, it appears the records of the two prisoners to which the Plaintiff refers are sealed pursuant to §160.50." DE[62] at 2.

In *Daniels v. City of New York,* 2001 U.S. Dist. LEXIS 2312 (S.D.N.Y. Mar. 7, 2001), Judge Scheindlin addressed a situation in which the plaintiffs sought the identity of, *inter alia*, potential witnesses/class action plaintiffs who had been arrested. She noted that "[a]rrested adults and juveniles are afforded certain statutory rights to privacy. For arrested adults, all records of the stop, arrest and prosecution are sealed by operation of law pursuant to Criminal Procedure Law §160.50 where the arrest and/or prosecution is terminated in favor of the arrestee." But state law does not govern discovery or confidentiality in federal civil rights cases. *See MacNamara v. City of New York,* 2006 U.S. Dist. LEXIS 82926, *7-8 (S.D.N.Y. Nov. 13, 2006). Here, Nimkoff has a section 1983 claim and this action is thus governed by Federal Rule of Evidence 501, which states that privileges are governed by federal common law. *Daniels*, 2001 U.S. Dist LEXIS 2312 at *2. State statutory privileges must be construed narrowly and "'must yield when outweighed by a federal interest in presenting relevant information to a trier of fact.'" *Id.*(quoting *United States v. One Parcel of Property at 31-33 York St.,* 930 F.2d 139 (2d Cir. 1991)). "'Nonetheless, the policies underlying state evidentiary privileges must still be given serious consideration, even if they are not determinative." *Id.* (quoting *Burka v. New York City Transit Auth.,* 110 F.R.D. 660, 664 (S.D.N.Y. 1986)).

CPL §160.50 protects "'important privacy interests, and a strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy.'" *MacNamara,* 2006 U.S. Dist. LEXIS 82926 at *8 (internal quotation marks and citations

omitted). Still, state privilege rules should not be permitted to "'frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983.) *Id.* (internal quotation marks and citation omitted). Thus, as a matter of comity, this court must balance the deference to be accorded the CPL §160.50 privilege with the need for the information sought to be protected by the privilege. *See Daniels*, 2001 U.S. Dist. LEXIS 2312 at *3; *MacNamara*, 2006 U.S. Dist. LEXIS 82926 at *9.

Here, Nimkoff's need for the testimony of his cellmates is potentially significant, if they witnessed the events that underlie his claims in this action, and their statements about those events cannot be obtained elsewhere. Balanced against this need for the information, and lack of alternative means of obtaining it, are the privacy concerns of the arrestees whose records have been sealed by operation of state law. In *Daniels* and other cases, the courts resolved the issue by following what has come to be called the "Daniels procedure," which "involves having the [defendants] supply to the court a list of arrestees with last-known addresses so that the court may contact these individuals and inquire whether they are willing to talk to litigating counsel." *Haus v. City of New York,* 2006 U.S. Dist. LEXIS 23006 at *16, n.6 (S.D.N.Y. Apr. 17, 2006) (citing *Daniels* and other cases); *see also Scherer v. City of New York,* 2005 U.S. Dist. LEXIS 7725, *2-3 (S.D.N.Y. Apr. 27, 2005)(pursuant to procedure, defendants provide magistrate judge with names of non-party arrestees, and magistrate judge contacts them to determine whether they are willing to speak with plaintiff's counsel). I will follow the approach used in *Daniels*. The defendants shall inform the court, *ex parte*, of the names and last-known addresses of the men who shared the cell with Nimkoff on the day of his arrest, within two weeks of the date of this

5

order and confirm that their records have been sealed pursuant to CPL §160.50. I will then send a copy of the attached letter to them. If they do not agree to speak with counsel, I will not compel disclosure of their names.

Interrogatory # 13

Interrogatory 13 asks the defendants to "[i]dentify the basis and reasons for Defendants' assertion (set forth in Paragraph 83 of the Answer) that the County Defendants had probable cause to arrest and detain Mr. Nimkoff." The defendants, in their first response, objected to the demand as "calling for a legal conclusion," and in their supplemental response, stated that "Defendants have testified in depositions as to the facts creating probable cause to arrest Mr. Nimkoff." The plaintiff argues that the request seeks not a legal conclusion but the factual basis for a legal defense, citing to Rule 33, which provides that "An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . ." The defendants argue that "Interrogatories seeking identification of all facts supporting a particular allegation are inherently improper." DE[62] at 3 (citing *Clean Earth Remediation & Constr. Servs., Inc. v. AIG, Inc.,* 245 F.R.D. 137, 141 (S.D.N.Y. 2007)). They further argue that because the interrogatory calls for an evaluation of law, plaintiff's counsel is "in as good a position as the [defendant] to perform [it]." *Id.* (citing *SJ Berwin & Co. v. Evergreen Entm't Group,* 1994 U.S. Dist. LEXIS 6181, *4-5 (S.D.N.Y. May 12, 1994)).

The interrogatory at issue is a contention interrogatory, which is permitted by Rule 33(c) and serves to "discover the theory of the responding party's case." *Jones v. Midland Funding, LLC,* 2009 WL 3107461, *1 (D. Conn. Sept. 22, 2009) (internal citations omitted). Such interrogatories "may ask another party to indicate what it contends, to state all the facts on which

6

it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts." *Strauss v. Credit Lyonnais, S.A.,* 242 F.R.D. 199, 233 (E.D.N.Y. 2007). While such interrogatories are generally permitted, the obligation to respond should be postponed until the end of the discovery period, absent a showing by the requesting party of a particular need. *Id.* Here, the actual language of the interrogatory does not seek the "facts" underlying the probable cause defense, and the request for the "basis and reasons" could be interpreted as seeking information that would be considered work privilege. Nonetheless, both parties, in their submissions on this motion, treat the interrogatory as seeking facts, and the court will do the same. The defendants have not argued that the contention interrogatory is premature, only that it is improper. It is not. It is insufficient for the defendants to state that they "have testified in depositions as to the facts creating probable cause" and refuse to specify what those facts are. Thus, they are ordered to do so within two weeks of the date of this order.

Inspection of the Cell

The plaintiff seeks to inspect and photograph "the holding cell(s) and the room containing the holding cell(s)" at the police station where he was held. He argues that Rule 34 (a)(2) allows a party "entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it," and that the defendants must allow the inspection and photographs. The defendants argue that "the degree to which a proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection," and that, here, the burdens and dangers outweigh the plaintiff's interest in the inspection. *DE[62] at 3; see Ehrlich v. Inc. Village of Sea Cliff,* 2007 WL

7

1593211, *2 (E.D.N.Y. May 31, 2009)(internal citations omitted).

The defendants state that the plaintiff seeks access to the Nassau County Police Department's Second Precinct Stationhouse cell, located in the Stationhouse arrest processing room. The "arrest room," they assert, is used to detain prisoners while their arrests are processed, and allowing Nimkoff access would require them to cease processing the arrests of any prisoners detained at the time of the inspection. This, they say, would increase detention time and require relocation of the prisoners and the provision of personal security for the prisoners while they are out of their cells, as well as protection for the plaintiff, which he has himself allegedly requested. Defendants have offered to provide the plaintiff with whatever photographs of the cell he requests as an alternative to his taking the photographs. I agree that this is the better approach. The security and logistic concerns of allowing the plaintiff to take the photographs outweigh his interest in performing the inspection himself. Within two weeks of the date of this order, Nimkoff shall tell the defendants the specific areas of the cell he wishes to have photographed, and the defendants shall provide the photographs within two weeks of the request. *See Solomon v. Nassau County,* CV 08-703, DE[15] (E.D.N.Y. Apr. 14, 2009).

## Motion Number 57

The second motion seeks an order compelling responses to document requests numbered 33-37 and to provide privilege logs for those documents that the defendants claim to be protected by privilege. The requests are for all civilian complaints against the defendant police officers. The defendants have limited their production to complaints that "relate to" the allegations made by Nimkoff against the defendants, that is, false arrest, unprofessional conduct and excessive force. They have withheld three complete files, one of which they say "appears to have been

8

incorrectly placed in a defendant's file as no defendant's name appears in the complaint." DE[63]. The other two files, they argue are "unrelated to Plaintiff's allegations." Portions of other files have been withheld to protect the privacy of complainants and other civilians. The plaintiff argues that all civilian complaints are relevant to this action, inasmuch as they may show a pattern of violating police procedure and may support his claim that "Nassau County created a culture of tolerance for police misconduct . . . ." Both parties suggest that an *in camera* review of the withheld documents and information is appropriate, and I agree with that suggestion. The defendants are directed to submit the withheld files, along with the redacted and unredacted versions of produced files, making clear exactly what portions were redacted and why. Those files should be submitted within two weeks of the date of this order.

The motions having been granted in part and denied in part, and the arguments on both sides having been, for the most part, substantially justified, no costs will be awarded to either party. *See* Rule 37 (a)(5)(A)(ii) & (C).

Dated: Central Islip, New York  **SO ORDERED:**
October 5, 2009

/s/ William D. Wall
WILLIAM D. WALL
United States Magistrate Judge